UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES JACKSON,<br><br>Defendant. | CRIMINAL NO. 25-CR-248 (CJN) |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing in the above-referenced case. The defendant pled guilty to Failure to Register as a Sex Offender in connection with his 2004 conviction for Rape in Virginia state court. Based on the defendant's conduct and the factors presented under 18 U.S.C. § 3553(a), the government respectfully requests that the Court issue a sentence of five months incarceration followed by ten years of supervised release.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2004, the defendant was sentenced to 17 years incarceration for one count of Rape in Richmond, Virginia, under docket number FE-2004-105392. As part of his sentence, the defendant was informed that he was required to register as a sex offender for life. The terms of his registration required him to register in any jurisdiction where he worked, resided, or attended school. This included jurisdictions where he habitually resided. The defendant was required to update his registration in each relevant jurisdiction every three months.

Following the defendant's release from custody in his Virginia case, he registered in both Virginia, where he worked, and Maryland, where he resided. On August 8, 2023, Virginia State Police issued a warrant for the defendant for failure to register as a sex offender. On April 15, 2025, the defendant registered with Virginia and came into compliance with his requirements to register in the state of his employment. On November 17, 2023, an arrest warrant was issued for the defendant by the Prince Georges County Sheriff's Office in Maryland for failure to register as a sex offender. The defendant did not come into compliance at any time after that date in Maryland or the District of Columbia, with respect to registering his residence. Starting from approximately June 9, 2025, until August 25, 2025, the defendant habitually resided in the District of Columbia at his girlfriend's residence. At no point in 2025 did the defendant register his address in the District of Columbia with the Court Services and Offender Supervision Agency.

At the time of the submission of this memorandum, the defendant is compliant with his sex offender registry requirements.

## DISCUSSION AND RECOMMENDATION

**I.  Generally Applicable Legal Principles**

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States*

*v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

### III. Sentencing Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the Presentence Report, estimating a final offense level of 13 after the adjustment for acceptance of responsibility, and a Guidelines range of 15 to 21 months of incarceration.

### IV. Government's Sentencing Recommendation

The government recommends a sentence of five months of incarceration, to be followed by ten years of supervised release. This sentence is appropriate given the length of the defendant's non-compliance with his registration requirements in multiple jurisdictions.

**V.     The § 3553(a) Factors Support a Sentence of Five Months of Incarceration.**

  A.     <u>Nature and Circumstances of the Offense</u>

  The defendant's conduct is serious and demonstrates a knowing and willful violation of the law. Following the defendant's release from custody he was informed of his requirement to register as a sex offender in the jurisdiction where he worked and where he resided. He was also informed of his requirement to register every ninety days. The defendant showed that he understood those requirements by registering in Virginia and Maryland. However, after he fell out of compliance in Virginia in 2023, he did not get back into compliance until 2025. In Maryland, the defendant fell out of compliance in 2023 and never came into compliance. Moreover, the defendant never registered in the District of Columbia despite habitually residing in the District.

  Congress created the Sex Offender Registration and Notification Act to ensure that the community was safe from individuals who committed sexually-based offenses. The requirement to register allows law enforcement to track the locations of individuals who have been convicted of sex offenses, and allows members of the public to know if they live or work in close proximity to a sex offender. When individuals who are required to register fail to comply with the law, it undercuts the purpose of registry. Given the extent of the defendant's noncompliance with the registration requirement, a period of incarceration is appropriate.

  B.     <u>History and Characteristics of the Defendant and Just Punishment for the Offense</u>

  The defendant already received a significant benefit in his plea agreement based on mitigating factors in this case, namely his efforts to maintain employment following his release from incarceration. The government acknowledges that, following the defendant's release from incarceration in his rape case in Virginia, he has not had any further arrests or contacts with law enforcement, aside from the instant matter. However, the defendant had multiple warrants out for

his arrest at the time the instant matter was charged, due to his noncompliance in both Virginia and Maryland. In weighing this factor, the Court should not only consider the number of contacts with law enforcement, but also the extent of the defendant's noncompliance with his requirement to register. This is not a case where the defendant merely failed to register in one instance. The defendant flouted this requirement for years after the Maryland warrant was issued and never complied with the registration requirement in the District of Columbia. Given that the defendant failed to come into compliance for years, a sentence of incarceration is appropriate.

      C.      <u>Adequate Deterrence and Protection of the Public</u>

The reason for the passage of the Sex Offender Registration and Notification Act was to ensure the safety of the public from sex offenders given the high rates of recidivism among sex offenders. When individuals who are required to register fail to comply with the law, it frustrates the purpose of the law to ensure the safety of the community. Therefore, a period of incarceration is necessary to ensure adequate deterrence to the general population and to protect the public. The government is seeking a lengthy period of supervised release following the defendant's release to ensure he maintains compliance with the registry moving forward.

      E.      <u>Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities</u>

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ]defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).

Here, the U.S. Sentencing Commission's Judicial Sentencing Information shows that the average sentence length for individuals sentenced under U.S.S.G. § 2A3.5 was 14 months and the median length of imprisonment was 15 months. The defendant in this case has already been afforded a significant benefit as a result of his plea agreement. Any further benefit would create an unwarranted sentencing disparity from the national average.

## **CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the defendant be sentenced to a term of incarceration of five months, followed by ten years of supervised release. Such a sentence contemplates not only the relevant guidelines range set forth for this offense, but also adequately reflects the factors as outlined in 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

 /s/ Janani Iyengar
Janani Iyengar
NY State Bar No. 5225990
Assistant United States Attorney
601 D St NW
Washington, DC 20530
(202) 252-7760
Janani.iyengar@usdoj.gov